Thank you. Good morning, Your Honors. Jeffrey Isaacs on behalf of the Defendant Appellant Kaine Wen. I'm here with Lydia Hochmeister. Mr. Wen is appealing from three orders of the District Court. As we've identified in our briefs, there were multiple problems with each of these orders. I'd like to start with the order denying Mr. Wen's application to reopen discovery. That, of course, is reviewed under an abuse of discretion standard. But here at the outset, I would like to note that the District Court applied the wrong legal analysis. You start, of course, with Rule 16b-4, which allows for scheduling orders to be modified for good cause. But that's just the first step. The second step is then to, the analysis requires, why are you seeking to modify the scheduling order? Here, the District Court inexplicably assumed that, and this is a reading from the District Court's order, assumed that a party who satisfies Rule 16's good cause standard, that party must still satisfy Rule 15. But Rule 15 has nothing to do with anything in this case. That has to do with amending pleadings. Can you tell me what due diligence was shown by Mr. Wen to really get those two depositions that he's seeking, the purpose for the opening of discovery, what due diligence he showed during the period of time between May 22 and December 22? Well, he was in custody the entire time that discovery was open. He was in custody until August, and then he was not in custody after that. He was in the FC, I believe. RRC. RRC.  But that is still custody. You have to report there. He had very, and at that point he was pro per. You understand that when someone is in an RRC, they have, among other things, they have all sorts of liberties, including meeting with lawyers, appointments, medical, and there's a whole series of things that they could have, that he could have done. He did nothing. Also, wasn't he represented by counsel a certain portion of the time? For eight months? Wasn't he represented by counsel? He was represented by counsel for the first eight months he was in custody, and I want to come back and answer your question, Your Honor. For the first eight months he was in custody, but this was all during COVID-19, and he was at FCI Sheridan and virtually had no access. I did not represent Mr. Wen in the civil case, but I did represent him in a related criminal case, and I know both myself and his civil counsel, it was impossible to really contact him. I believe his civil counsel, as Mr. Wen said, only was able to have one telephone conversation. They did not allow for any in-person visits, but to address your question, Your Honor, what's really important here, the key date... To address their question, though, did he not have phone contact then? Very limited. I think he was only able to... You actually had to get permission, and he only was able to get permission for one telephone conference with his civil counsel. Is this in the record? Yes, Your Honor. Okay. Why wouldn't his counsel have had an obligation to show diligence in taking these two depositions? Well, here's the thing. The motion for summary judgment wasn't filed until January 30th of 2023, after the discovery period ended, and that is when Mr. Wen first finds out that the CFPB is relying upon the declarations of Mr. Kim and Mr. Nguyen, and that's really the key, and that's why I say the problem with the analysis by the district court is it's not Rule 15, it's really Rule 56 that you apply whether he has an opportunity to then go out and get declarations or conduct discovery. But that's a product... Isn't that a product of counsel conducting no discovery? I mean, so you serve basic interrogatories, so you have initial disclosures, presumably, so the idea that it was somehow a surprise that they moved for summary judgment based on the declarations of the other people who he did business with, that should be a surprise. Well, it was a surprise because the CFPB plaintiff didn't take any discovery either of Mr. Kim or Mr. Nguyen, and so if I was representing Mr. Wen at the time, I would not be taking their depositions until I actually saw what they were going to say. Well, but all of the witnesses were identified at the onset of this case. But not what the... Who knew what they were going to say? Mr. Wen was... I mean, it's Mr. Kim and Mr. Nguyen. And that's why you get a deposition and request one. Well, that's also why you have Rule 56, which allows for, once you see the motion, and this was not a small motion for summary judgment. We're dealing with a pro per defendant. This is 1,500 pages of motion papers. I believe that there was in excess of 100 exhibits. There were 29 declarations. So you're not going to really know what it is you need to address in something like this until you actually see it. And that's exactly why you have Rule 56, which allows for the court to provide or open discovery to address something like that if you don't have a chance. Mr. Wen never had a chance to conduct any discovery in opposing this. And here's the thing, though. Why not? The district court ultimately modified the order and his scheduling order and extended it to... Extended the trial date to, I believe, September of 2023. The motion hearing date to April of 2023. Why not just allow Mr. Wen to conduct discovery? He wanted to take two depositions and serve some written discovery to understand what type of money had already been collected so he could argue to reduce the amount of the restitution, the legal restitution. But the question is, was that an abuse of discretion? And I think under the circumstances, because first, the wrong analysis was applied, and second, again, looking at the chronology and the fact that that motion was not filed until January 30th. So even if he had conducted a deposition of Mr. Nguyen and Mr. Kim, it wouldn't necessarily have addressed the issues that they were raising in their declarations, which he was only received notice of on January 30th, if he even got the papers at that time. But he didn't even request reopening of discovery until one day before his opposition brief was due to the summary judgment motion. I mean, you'd think it would have been... If he was acting diligently, immediately when the summary judgment motion was filed, he'd ask to have discovery. Well, first, again, it's 1,500 pages, so I don't know how long it takes to go through it and determine what you need. He's pro per, but also he was involved in discussions with the CFPB during that time, as soon as he got out, and there was a settlement conference. And so it wasn't like nothing was happening and that he was doing nothing. It's just that he did not have an opportunity to conduct the depositions. But again, since it was continued, why not give him that opportunity to actually defend himself against this motion that was seeking a quarter billion dollars in... I don't think that's the right question. I think the question is, why would the judge have to do that, given the fact that he had an attorney who had 10 years of experience, and obviously understood the rules of discovery, and did nothing during that period of time, even after he was pro se? Well, again, I think the record is pretty clear that he virtually had no access to his counsel, and that was common among federal inmates at this time due to COVID. You could not meet with... There was no in-person meetings and very limited telephone conferences. What period of time are we talking about here? I'm sorry? What period of time are we talking about that he was actually incarcerated? He was... There's a chronology that we set forth in our reply. Until August 8th, I understand. Is that correct? That's when he was transferred then to the RRC. Correct. But again, you're talking about a period of COVID and very limited access to anything. No cell phone, no laptop, no pad, and in a system where everything is electronic. And I think Mr. Nguyen showed in his declaration in support of his ex parte application that it was just very difficult, again, for somebody who is pro per, to be able to properly respond to this massive motion that was addressing 22 different causes of action and the like. I want to turn your attention in some of your remaining time to the restitution. You brought up the fact you don't contest that with respect to the restitution due that the contributions of the co-defendants offsets that amount. No, that is our position that it does offset it. Okay. But, and you think that that's contested by the CFPB? Well, it's not in the judge's order and it's not in the final judgment. The final judgment just says pay $94 million and that's what the CFPB tried to collect. That may be something we'll seek clarification of from your friends. With respect to the request for the hearing, why else would you be entitled to a hearing? Well, we think that there were genuine issues of material fact and dispute relating to what the correct amount was. But principally, it has to do with, as your Honor said, reducing that amount, which could be considerable. As we documented in our brief, there was, in the record, there's about $124 million in judgments and settlements. And we approximated about $25 million had been already collected. That was two years ago. We know that there was additional monies collected since then. So we're talking about a substantial reduction in that, which could affect the civil penalties as well. And of course, under civil penalties, we're contesting that Mr. Nguyen was entitled to, now under the Jarsky opinion, was entitled to a jury trial on that issue. And if there's no more questions, I'll reserve the remainder of my time. All right. Thank you, Counsel. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. Amanda Krauss on behalf of the Consumer Financial Protection Bureau, and with their consent, arguing on behalf of all plaintiffs at police. I'd like to start by setting the table a little bit. The summary judgment record in this case is clear that Mr. Nguyen is liable for his role in a deceptive student debt relief scheme. Actually, I'm sorry, but if you could actually turn to one issue that I'm trying to understand, and I want to make sure I'm clear on your position. Sure. If 5565C3 requires the Court to take into consideration the size of the defendant's financial resources, there's a pending motion, or excuse me, a pending pleading by Mr. Nguyen indicating that he satisfied the information that was requested as to why he couldn't pay what his financial resources were. And that's sort of out in the ether out there. I don't think that the court has, the district court has ruled on that. But then, but, but if, if the, should we send it back so that the court can consider that before issuing the civil penalty? No, Your Honor. The court, this court can affirm the judgment on the penalty on the record before it. The issue that's pending before the district court is a pending motion for contempt filed by the receiver in this case for Mr. Nguyen's failure to return over assets in violation of the final judgment. In the course of that proceedings, Mr. Nguyen has recently raised some new evidence in opposing the judgment. But I think the question of whether he has complied with the judgment is a separate question from whether the judgment is proper in the first instance. And the new evidence that was before, that's been brought up before the district court de facto was not before the trial court when the court entered the judgment. And so Mr. Nguyen, if Mr. Nguyen believes that that judgment or that new evidence should have changed the judgment, the proper avenue for that would be a Rule 60B motion. It wouldn't be belatedly raising it for this court on appeal to overturn. But so turning just to directly answer your question about the size of financial resources. To start, that was only one of many factors that the district court was required to consider in assessing the proper penalty. And the court, although it did express some skepticism about whether an ability to pay was the required, that the court was required to consider his ability to pay, and nevertheless took into account Mr. Nguyen's sizable cryptocurrency assets that were found through an earlier contempt proceeding that Mr. Nguyen had concealed in violation of an asset freeze. But do you agree that even considering those concealed cryptocurrencies, the size of that as compared to ultimately the fine, doesn't that play a role in this particular analysis? I mean, that was certainly a large amount. Fine, what was it, 140? The penalty was $148 million, but the restitution at issue in this case is over $95 million. And again, Mr. Nguyen was held jointly and severally liable for that $95 million in restitution. And on that point, just for my exchange with your friend, the district court, you agree that the district court order says that any amount contributed as restitution by other defendants will reduce the defendant's liability. So it is joint and several.  The final judgment explicitly says that the order of restitution was joint and several. We do not dispute that any amounts that have already been collected should offset Mr. Nguyen's liability. If there was a genuine dispute of material fact as to some of his liability, then of course that may need to be recalculated. I'm happy to discuss why there in fact was not a genuine dispute of material fact. So no, there's no issue with respect to the offset. The civil penalty, though, I am told by fact that even though there's supposedly cryptocurrency out there somewhere, it's not real in the sense that we don't know how much it is, where it is. You know, it's just out there. And what he has shown is that he doesn't have an ability to pay almost $150 million in a civil penalty. So Mr. Nguyen is the one who created the uncertainty over the size of his financial resources. And again, I'll just remember that that's only one factor to be considered, weighed against many other factors, including the fact that the size of the, or sorry, the gravity of the violations at issue in this case were very severe. Well, one of the other factors is his good faith, which the court is supposed to consider as well. Correct. Which is what you're saying. Yes, and I think that Mr. Nguyen's course of conduct over the course of this case certainly establishes that he did not demonstrate the requisite good faith to get any mitigation of the penalty. That's demonstrated by the fact that he shifted company operations to try and conceal the company's operations from law enforcement. He deleted emails and text messages once the company's operations were coming to light. And then he hid assets in violation of a court-ordered asset freeze. And so Mr. Nguyen's long course of conduct, particularly with respect to the cryptocurrency, demonstrates both that the size of financial resources is probably not a factor that the court was required to mitigate here, and also that he demonstrated bad faith. So just to walk through a little bit about the evidence of the cryptocurrency. So to start on a financial disclosure form that Mr. Nguyen was required to complete through the preliminary injunction, he first stated that he had no cryptocurrency whatsoever. When the Consumer Financial Protection Bureau discovered that there were some inaccuracies in his statements, we pressed him on that. And only at that point did he disclose for the first time that he had some cryptocurrency, but not all of it. Then after a show cause hearing on the Bureau's first motion for an order show cause, he then disclosed slightly more, but still not everything. He really, through the course of this case, has only provided information when pressed by it when required through evidence that made it clear that he simply couldn't hide it any further. The district court in the first order show cause hearing described Mr. Nguyen's conduct as a cat and mouse game, which I think is exactly right. So again, he's the one that created the uncertainty about the size of his financial resources, which I think shows that it's appropriate that the district court didn't mitigate the penalty on that basis. On the penalty, as I understand it, it was, you counted every single day of the period, three violations per day. What are we supposed to do with the fact that it seems like it is unlikely that, or I guess, give me a sense of your logic here, where the violations were charging enrollment fees, which as I understand would be one time per client or victim, charging recertification fees, and I think those were more periodic, and then deceptive conduct, which would involve communication to each member of the class. What's the Bureau's theory as to what it has to show to establish that all three of those violations, some of which are quite discreet in time and periodic and not continuous, actually, I think all of them are, were happening at each point in the time period? Sure, Your Honor. So the statute under 12 U.S.C. 5565C states that a penalty should be assessed for each day that a violation continues. And so here, this is a course of conduct that began on November 5th of 2015 and continued until I believe October 19th of 2023, or 2019, excuse me. And so those practices, those company practices began at the beginning and continued throughout that period. But if the district court was supposed to take into account each individual violation, so for instance, each illegal advance fee, that would be the case of the court charging at least, or the court accounting at least 80,000 distinct violations, which if you just do that for 80,000 violations one day at the second tier of penalty would amount to, I believe it was $2.5 billion in penalty, that far exceeds. This is the more lenient approach.  Okay. So how many victims were there? Over 80,000. I don't have the precise number, but I know it was over 80,000. And that was established? Correct. Undisputed by Mr. Nguyen.  And I'll just also note, Your Honor, to Judge Johnstone, giving this sort of how to, district courts do have discretion to like consider what constitutes the violation in a particular case instead of the penalty. It's consistent with this court's decision in the SEC v. Murphy case, the 2022 case. There, there was a, the court noted that district courts have discretion to determine what counts as a violation and can use various proxies, including the number of investors, number of fraudulent transactions. That was an SEC case, but a similar statutory scheme. I'll turn back now with the time I have to just discuss the, I'd like to correct just a couple of things that Mr. Isaacs raised about the motion to reopen discovery. I think Your Honor's questions make it clear that you understand there was no abusive discretion on the part of the district court in denying that motion. I'll just note briefly though, that there's evidence in the record that when Mr. Nguyen was confined in FCI Sheridan, where he claims now that he was effectively incommunicado, there's evidence showing that Mr. Nguyen simply refused communications with plaintiff's counsel, which prompted him to resign. It prompted a motion to compel. The court did order him to compel responses to discovery. It's detailed at 1 ER 71 in the district court's order, denying the motion to reopen discovery. And then also, Mr. Isaacs says that Mr. Nguyen didn't receive Mr. Kim's declaration until the motion for summary judgment. That's false. Mr. Nguyen served with Mr. Kim's declaration in October of 2022, while he was at the residential re-entry facility, where he also had access to email, including showing that he responded to plaintiff's discovery requests, written discovery requests in October of 2022. I'll turn now to addressing the motion for summary judgment. So there's no dispute on appeal that Mr. Nguyen is liable for the period after June, 2017. The only thing that he disputes on appeal is whether he is liable for the period between November, 2015 and June, 2017. And there's a plethora of undisputed evidence in the record to show that Mr. Nguyen was both directly liable and liable as a substantial assister in violation of the TSR and the CFPA. To establish that he was directly liable for the violations, plaintiffs had to prove that he participated directly in the violation or had authority to control them. And then also that he was at least recklessly indifferent. Substantial assistance is actually a lower standard. We only had to prove that he provided some substantial assistance to the company and also had some reckless indifference to the company's conduct. I'll note that Mr. Nguyen barely addresses the substantial assistance standard in his briefing, perhaps because it's very clear that the standard here is met. And so I'll walk quickly through the evidence of his authority to control and substantial assistance before turning to the mental element. So on authority to control. First, there are documents that show that Mr. Nguyen was the company's general counsel beginning in November of 2015. He was also listed on a document as the company's chief financial officer. He was a signatory on bank accounts and merchant accounts, including accounts that were active between 2015 and 2017. He was an equal owner of the company with Mr. Kim from the very beginning. That was a point that he conceded in his own declaration opposing the motion for summary judgment. And he responded to or reviewed consumer complaints, including during the period that he calls period one. For substantial assistance, sorry, all of that evidence clearly shows that he had the authority to speak for and sign documents on behalf of the company, which shows the requisite ability to control it for direct liability. For substantial assistance, all plaintiffs had to establish is that he provided more than mere casual or incidental assistance to the company. Again, here he was the company's general counsel in his own declaration. He notes that he provided help with budget issues. That is enough, more than enough to meet that threshold. With respect to the mental element, again, there's plenty of evidence, undisputed evidence in the record to show that Mr. Nguyen knew of or consciously avoided knowing of the company's violations. That's shown by a November 2015 agreement that Mr. Nguyen signed as general counsel, acknowledging that the company had to comply with the telemarketing sales rule and the Consumer Financial Protection Act. Again, he is the general counsel, and yet he took no steps to ensure the company complied with those laws. He also discussed the company's fee schedule with Mr. Kim in an email in period one. That's in April of 2016. That email is at 1SER95. Mr. Nguyen also acknowledged in his declaration that Mr. Kim had made him aware of the alterations to consumers' family sizes in their income-driven repayment plan applications. And again, he reviewed and responded to consumer complaints, including consumer complaints that acknowledged that the company had charged illegal upfront fees, and he responded to a consumer who complained that she had been scammed because the company inflated her family size on the loan application. And also, all of this evidence is only what remains after Mr. Nguyen undisputedly deleted company emails and his text messages through the course of this proceeding. So all of this evidence is sufficient to show that Mr. Nguyen was liable, both directly liable and as a substantial assister in violation of those laws. Unless your honors have any further questions, we ask that you affirm the judgment below. Thank you, counsel. Thank you. Thank you, your honors. Real quick on this issue of the cryptocurrency. I believe counsel said there was no, that this is new evidence that Mr. Nguyen is putting forth, and that's not correct. The district court's contempt order was entered on January 6th, 2023. It had included in it two purgation provisions with a deadline of January 17th, 2023. And this required Mr. Nguyen to make detailed disclosures. He in fact filed a lengthy and detailed declaration on January 17th, 2023 prior to the deadline. And since that time, neither the CFPB nor the receiver have ever challenged that showing made by Mr. Nguyen. So we have two and a half years during which they've never challenged it. They've not produced any evidence that he is somehow still holding cryptocurrency secretly. And furthermore, the contempt order provided for a $1,000 a day sanction if Mr. Nguyen failed to purge himself. The district court was never asked to impose that sanction, never did. That ruling merged with the final judgment. Counsel, what should we do about that motion? Should we do a limited remand or? I think certainly, well, that motion has now been under submission, or sorry, was filed, I think in August it'll be two years, and in September it'll be under submission for two years. That's the receiver's motion post-judgment to have to have Mr. Nguyen held in contempt. When we came into the case, we supplemented, we filed a supplemental memo asking that the district court deny the motion and also find that Mr. Nguyen had purged himself of the contempt, which, by complying with the purgation provisions, these are the district court's purgation provisions, nobody's challenged the showing that he made, and I think that goes exactly to this issue of his financial resources to satisfy a $148 million civil penalty. If it's a post-judgment motion, though, I mean, it's not something that we can consider. Well, the CFPB raised that issue to try to support the district court's determination that Mr. Nguyen still had access to substantial resources in order to satisfy this penalty. He's already turned over more than $10 million in assets, including considerable assets that were not the product of this scheme, which, according to Mr. Nguyen, he only received about $1.5 million. If I may have just one more minute to address a couple of the other issues. As far as that time period goes where Mr. Nguyen contends that he's not liable, the issue is what he knew and when he knew it, and that really comes down to the Mr. Kim's declaration versus Mr. Nguyen's 49-page declaration. And if you look at Mr. Kim's declaration and Mr. Nguyen's declaration carefully, you will see that there's really, and including the exhibits that supposedly support it, there's nothing in there prior to 2018 to show that Mr. Nguyen was actively involved in the operation. This was really Mr. Kim's enterprise. Mr. Nguyen became involved. He's not contesting that he would have become liable after June of 2017. But for that prior period, which is important in determining the amount of the civil penalty for sure, there are definitely issues of material fact. If the Court doesn't have any other questions, I would submit. All right. Thank you, Counsel. Thank you very much, Your Honors. The CFPB versus Nguyen is submitted. And I'm going to see if Counsel for Wong versus Bondi is here.
judges: WARDLAW, MENDOZA, JOHNSTONE